UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────

BENJAMIN BRAXTON a/k/a
OBED/EDOM BRAXTON,

                                      Plaintiff,

     v.                                                         9:17-CV-1346
                                                          (BKS/ML)

KEVIN BRUEN, et al.,

                                      Defendants.

─────────────────────────────────

APPEARANCES:

BENJAMIN BRAXTON
16-A-2314
Plaintiff, pro se
Clinton Correctional Facility
P.O. Box 2000
Dannemora, NY 12929

HON. LETITIA JAMES                        JOSHUA E. MCMAHON, ESQ.
New York State Attorney General
Attorney for Defendants
Litigation Bureau
The Capitol
Albany, New York 12224

MIROSLAV LOVRIC
United States Magistrate Judge

### REPORT-RECOMMENDATION AND ORDER[1]

      Plaintiff *pro se* Benjamin Braxton ("Braxton" or "Plaintiff"), an inmate who was, at all

relevant times, in the custody of the New York Department of Corrections and Community

─────────────────────

     [1]     This matter was referred to the undersigned for report and recommendation pursuant to 28
U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 against Defendants Deputy Commissioner of Counsel Kevin Bruen ("Bruen"), Deputy Commissioner of Program Services Jeff McKoy ("McKoy"), Deputy Commissioner of Facility Operations Joseph Belinier ("Belinier"), Deputy Commissioner of Administrative Services Daniel F. Martuscello, III ("Martuscello"), and Deputy Commissioner Chief Medical Officer Carl J. Koenigsmann ("Koenigsmann") for violations of his rights under the Eighth Amendment.  Dkt. No. 42 ("Am. Compl.").  Presently before the Court is Defendants' motion for summary judgment and dismissal of Braxton's Amended Complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Dkt. No. 80.  For the following reasons, it is recommended that Defendants' motion for summary judgment be denied.

## I.  BACKGROUND

### A.  Facts[2]

From 1994 until 2008, Plaintiff was incarcerated in various DOCCS' facilities.  Dkt. No. 80-3 at 18-19.  In 2008, Plaintiff was released from custody.  *Id.* at 19.  In June 2009, Braxton was treated at Bellevue Hospital for lightheadness, palpitations, and "fading out" due to exposure to cigarette smoke.  Am. Compl. at ¶¶ 78-79; Dkt. No. 42-1 at 38-40.

In 2013, Plaintiff returned to DOCCS' custody.  Dkt. No. 80-3 at 19.  In June 2016,

---

[2]        Defendants filed a Statement of Material Facts.  Braxton did not respond but annexed exhibits to his opposition. Dkt. Nos.  86-1 and 87.  The parties do not object or challenge the authenticity of the documents.  Therefore, to the extent that the "facts" asserted by the parties are supported by the record, the undersigned will consider the facts and relevant exhibits/documents in the context of the within motion.  *See U.S. v. Painting known as Hannibal*, No. 07-CV-1511, 2010 WL 2102484, at *1, n.2 (S.D.N.Y.  May 18, 2010) (citing *Daniel v. Unum Provident Corp.*, 261 F. App'x 316, 319 (2d Cir.  2008) ("[A] party is not required to authenticate documents on a summary judgment motion where, as here, authenticity is not challenged by the other party)).  In light of the procedural posture of the case, the following recitation is derived from the record now before the Court, with all inferences drawn and ambiguities resolved in non-moving party's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

Plaintiff was incarcerated at Downstate Correctional Facility.  Am. Compl. at ¶ 60.  Plaintiff was housed in an area with seventeen inmates who were "chain smokers."  *Id*.

In August 2016, Plaintiff arrived at Clinton Correctional Facility ("Clinton C.F."), where he is currently confined. Am. Compl. at ¶ 62.  Plaintiff is confined to a single occupancy, 6 x 9 cell, without a window.  Dkt. No. 80-3 at 20-24.  The cell door is comprised of bars however, there is no "cross ventilation" because inmates in the dormitory block the vents in their cells with tape to prevent roaches from entering their cells.  *Id*. at 22-23.  There are forty-six inmates on each tier of the dormitory, with six tiers.  *Id*. at 32-33.

Clinton C.F. has a policy prohibiting smoking indoors.  Dkt. No. 80-3 at 42-44.  The "majority of inmates" in Braxton's dormitory are smokers or "chain smokers" who smoke between three and five packs of cigarettes each day.  Am. Compl. at ¶ 62.  In Braxton's dormitory, approximately 275 inmates smoke constantly in their cells, every night, using "makeshift" ash trays from soap.  *Id*. at ¶ 61; Dkt. No. 80-3 at 34.  Braxton claims that the smoke lingers in the air and causes him to wake during the night wheezing and coughing.  Am. Compl. at ¶ 61.  In the morning, Braxton's shirts are 'beige" in color from nicotine.  *Id*. at ¶ 36.  The inmates and officers also smoke in the hallways and in "hideaways," areas without cameras.  Dkt. No. 80-3 at 36.  Braxton has witnessed corrections officers verbally reprimand inmates who failed to comply with the policy.  *Id*. at 44.

From August 2016 until June 2017, Plaintiff received medical treatment for complaints related to exposure to second-hand or Environmental Tobacco Smoke ("ETS") including asthma, congestion, eye irritation, and sneezing.  Am. Compl. at ¶ 76; Dkt. No. 1-1 at 8-11, 22.

## B. Procedural History

On December 14, 2017, the Court received Braxton's Complaint.  Dkt. No. 1.  Upon

review of the Complaint, the Court directed Defendants to respond to the Eighth Amendment

claims related to ETS or second hand smoke.  Dkt. No. 10.  On May 3, 2018, Defendants

filed an Answer to the Complaint.  Dkt. No. 17.  On November 15, 2018, the Court granted

Plaintiff's motion to amend the Complaint and accepted the proposed Amended Complaint,

as modified by the Court's Decision and Order, as the operative pleading. Dkt. Nos. 41 and

42.  On November 28, 2018, Defendants filed an Answer to the Amended Complaint.[3]  Dkt.

No. 46.  On July 5, 2019, Braxton was deposed.  Dkt. No. 80-3.  On February 21, 2020,

Defendants filed the within motion pursuant to Fed. R. Civ. P. 56 seeking judgment as a

matter of law.  Dkt. No. 80.  Braxton opposed the motion.  Dkt. Nos. 86 and 87.

## II. MOTION FOR SUMMARY JUDGMENT[4]

## A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any

material fact, it is supported by affidavits or other suitable evidence, and the moving party is

entitled to judgment as a matter of law.  The moving party bears the burden of demonstrating

the absence of disputed material facts by providing the court with portions of pleadings,

depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the

---

[3]        In the Answer, Defendants pleaded, *inter alia*, the affirmative defense that Braxton failed to
exhaust his administrative remedies. Dkt. No. 46 at ¶ 100.

[4]        All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise
noted, have been provided to Plaintiff.

case as determined by substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 317, 248 (1986).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. Fed. R. Civ. P. 56; *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. *Skubel v. Fuoroli*, 113 F.3d 330, 334 (2d Cir. 1997). Furthermore, where, as here, a party seeks judgment against a *pro se* litigant, a court must afford the non-movant special solicitude. *See Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must

5

be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . .  At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law.

*Id.* (citations and footnote omitted); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191–92 (2d Cir. 2008).  Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

## B.  N.D.N.Y. Local Rule 7.1(a)(3)

Local Rule 7.1(a)(3) requires a party moving for summary judgment to file and serve a Statement of Material Facts.  *See* N.D.N.Y. L.R. 7.1(a)(3).  "The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue."  *Id*.  The opposing party is required to file a response to the Statement of Material facts "admitting and/or denying each of the movant's assertions in matching numbered paragraphs."  *Id*.  "The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."  *Id*. (emphasis omitted).

Here, Braxton filed a Memorandum of Law in Opposition to Defendants' Motion, but did not respond to Defendants' Statement of Material Facts.  *See* Dkt. Nos. 86 and 87.  Although the Local Rules provide, that the Court shall deem admitted any facts the non-

6

moving party fails to "specifically controvert," pro se plaintiffs are afforded special solicitude in this District and within the Second Circuit.  N.D.N.Y. L.R. 7.1(a)(3); *see* subsection II.A. *supra*.  In light of Plaintiff's pro se status, the Court has reviewed the entire summary judgment record in order to ascertain the undisputed material facts.  *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (noting court's "broad discretion to determine whether to overlook a party's failure to comply with local court rules").

Consequently, the facts set forth in Defendants' Rule 7.1 Statement of Material Facts are accepted as true as to those facts that are not disputed by Braxton's sworn deposition testimony, annexed as an exhibit to Defendants' motion.  *See* N.D.N.Y.L.R. 7.1(a)(3) ("The Court shall deem admitted any properly supported facts set forth in the Statement of Facts that the opposing party does not specifically controvert.") (emphasis omitted).

## III.  DISCUSSION

Defendants move for summary judgment and dismissal of Braxton's claims for failure to exhaust his administrative remedies.  *See* Dkt. No. 80-1 at 4-6.  In the alternative, Defendants contend that there are no disputed issues of fact precluding summary judgment on the Eighth Amendment claims and, further, that they are entitled to qualified immunity. *See id.* at 7-12.

## A.  Exhaustion

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising

7

out of his or her incarceration. *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *see also Woodford v. Ngo*, 548 U.S. 81, 82 (2006). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. *Id*. at 524. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal citation omitted).

Here, there is no dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program ("IGP"). N.Y. Comp. Codes R. & Regs. title 7, § 701.5 (2015). First, the inmate must file a complaint with IGP clerk within twenty-one days of the alleged action. *Id*. at § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. *Id*. at § 701.5(b)(1). If no informal resolution occurs, the full IGP committee must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. *Id*. §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. *Id*. § 701.5(c)(1). If the superintendent's determination is unfavorable to the inmate, the inmate may appeal to the Central Office Review Committee ("CORC")

8

within seven days after receipt of the superintendent's determination. *Id*. §§ 701.5(d)(1)(i)-(ii). If a grievant does not receive a copy of the written notice of receipt within 45 days of filing an appeal, the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC. *Id*. at § 701.5(d)(3)(i). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." *Id*. § 701.5(d)(3)(ii). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F.Supp.2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia, Porter*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter,* 534 U.S. 516.

Defendants bear the burden of establishing that a prisoner failed to satisfy the exhaustion requirement. *See Jones*, 549 U.S. at 216.

At the time of the incidents that give rise to this action, Clinton C.F. had an Inmate Grievance Program ("IGP"). Dkt. No. 80-5; Dkt. No. 80-7. Braxton admits that he is familiar with the IGP, having filed "easily more than ten" grievances during his incarceration. Dkt. No. 80-3 at 71-76, 116-199, 123.

### 1. Plaintiff's Failure to Exhaust

The record contains few undisputed facts related to Braxton's attempts to exhaust his administrative remedies. Braxton testified that he submitted a grievance on October 5, 2016

9

complaining about inadequate ventilation, his health and safety, and "under enforcement" of the non-smoking policy.  Dkt. No. 42-1 at 1; Dkt. No. 80-3 at 81.  Braxton testified that, because he did not receive a response to his grievance, he appealed his grievance to the IGRC Supervisor and requested a formal hearing.  Dkt. No. 80-3 at 81, 84-85.  After receiving no response from the IGRC, Braxton appealed his grievance to the Superintendent of Clinton C.F.  *Id.* at 81, 85.  With no response from the Superintendent, on October 31, 2016, Braxton appealed his grievance to DOCCS' Commissioner Anthony Annucci and to the "IGRC Administrator" at the State Commission of Correction. Dkt. No. 80-3 at 86.  Braxton did not receive a response to his October 31, 2016 correspondence.  *Id*. at 93.

Braxton testified that he submitted a second grievance on February 11, 2017, with the same complaints, and attached a document entitled "Proposal for Non-Smoking Dormitory - Grievance Appeal" (the "Proposal").  Dkt. No. 1-1 at 13-19; Dkt. No. 80-3 at 96.  On February 17, 2017, because he did not receive a response, Braxton appealed his grievance to the IGRC Supervisor and asked for a formal hearing.  Dkt. No. 80-3 at 97, 100.  On February 23, 2017, because he received no response from the IGRC Supervisor, Braxton appealed his grievance to the Superintendent of Clinton C.F.  *Id*.  The Superintendent's Office acknowledged receipt of the appeal on February 24, 2017.  Dkt. No. 42-1 at 9.  On February 24, 2017, Superintendent Kirkpatrick responded and directed Braxton to file a grievance. Dkt. No. 80-3 at 112.

Braxton testified that, in light of the fact that he had already filed grievances, he sent

10

his grievances, appeals, and Proposal directly to Koenigsmann, Martuscello, Bruen, Bellnier and McKoy, who were members of CORC.  Am. Compl. at ¶¶ 71-75; Dkt. No. 1-1 at 23-29; Dkt. No. 80-3 at 93.  Braxton forwarded the letters on April 19, 2017 and did not receive a response.  Dkt. No. 80-3 at 112.

Conversely, Defendants assert that Braxton did not file any grievances or appeals related to ETS exposure.  In support of their motion, Defendants submit a declaration from the IGP Supervisor at Clinton C.F. Christine Gregory ("Gregory").  Dkt. No. 80-7.  Gregory avers that "[p]laintiff's claims in this action are a proper subject for a grievance under the IGP."  *Id*. at ¶ 12.  Gregory states that, based upon a review of DOCCS' records, Braxton did not file any grievances related to ETS or second-hand smoke.  *Id*. at ¶¶ 13-14.  Defendants also submit a declaration from DOCCS IGP Assistant Director Rachael Seguin ("Seguin").  Dkt. No. 80-5. Seguin's review of CORC records did not reveal any appeals from Braxton related to ETS.  *Id*. at ¶ 16.  Defendants also submit documents related to Plaintiff's grievance history.  Dkt. No. 80-6; Dkt. No. 80-8

The issue of whether Braxton filed grievances and appeals is clearly disputed.  However, Braxton concedes that he did not receive a response from CORC, or any of CORC's members, prior to filing the within action.  Dkt. No. 80-3 at 93, 112.  As a result, I find that Plaintiff failed to exhaust his administrative remedies before filing this action.[5]

---

[5]    In the alternative, Defendants argue, without citing to supporting caselaw, that even assuming Plaintiff submitted grievances, Plaintiff failed to exhaust because he submitted his February 10, 2017 appeal to "select members of the CORC, rather than submitted the appeal directly to the IGRC for forwarding to CORC.  *See* Dkt. No. 80-1 at 6.  Because Plaintiff concedes that he did not exhaust his administrative remedies, the

## 2.  Availability of Administrative Remedies

The Court's finding that Braxton failed to exhaust his administrative remedies does not end the exhaustion review.  A prisoner's failure to exhaust administrative remedies may be excused if remedies were unavailable to the inmate.  *Ross v. Blake,* 136 S.Ct. 1850, 1858 (2016) ("An inmate [...] must exhaust available remedies, but need not exhaust unavailable ones."). There are three potential circumstances where administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use;" and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Williams v. Priatno*, 829 F.3d 118, 123-24 (2d Cir. 2016) (quoting *Ross*, 136 S.Ct. at 1858-1861).

Braxton argues that administrative remedies were unavailable because the grievance process did not provide "steps for ignored grievances."  Dkt. No. 86 at 9.  The issue of "unfiled and unanswered" grievances was addressed by the Second Circuit in *Williams v. Priatno*.  In *Williams*, the plaintiff, who was confined to the SHU, claimed that he gave a grievance to a guard to file but the grievance was never filed and therefore, the inmate never received a response.  *Williams*, 829 F.3d at 126.  The plaintiff alleged that the guard must

---

Court need not address the issue of whether an appeal sent directly to CORC members complies with the IGP.

have disposed of the grievance because the facility had no record of the grievance. *Id*. The Circuit ruled in favor of the inmate holding that "[u]nder that circumstance, the regulations do not adequately outline the process to appeal or otherwise exhaust administrative remedies. On their face, the regulations only contemplate appeals of grievances that were actually filed." *Id*. at 126.

In *Cicio v. Wenderlich*, 714 Fed. App'x 96 (2d Cir. 2018), the Second Circuit declined to apply the holding of *Williams* in a case where the plaintiff claimed that he filed a grievance directly with the IGRC, rather than providing the grievance to a prison guard to file on his behalf. The IGRC had not record of receipt of the grievance and the plaintiff admitted that he never received a response and, rather than appeal, he commenced the lawsuit. *Id*. at 97-98. In that instance, the plaintiff was not transferred after he attempted to file his grievance and the Circuit held, the "situation was not so opaque that it became 'incapable of use' because '[w]hen a prisoner has filed a grievance, but receives no response, the regulations provide a right of appeal.' " *Id*. (citing, *inter alia*, 7 N.Y.C.R.R. § 701.6(g)).

In this matter, Braxton claims that he filed two grievances and appeals to the IGRC, Superintendent, and individual members of CORC. Braxton provided extensive deposition testimony regarding his efforts to file grievances and appeals and proffered copies of his grievances, appeals, and letters. *See* Dkt. No. 1-1 at 4-5, 1-20, 23-29; Dkt. No. 42-1 at 1-5, 9. Defendants have failed to come forward with any evidence contradicting Plaintiff's deposition testimony and documentary evidence. Indeed, Defendants' motion lacks an

13

affidavit from Kirkpatrick or sworn testimony from Defendants.  Accordingly, the Court finds that Defendants have failed to carry their burden of proving the affirmative defense on the present record.  *See Juarbe v. Carnegie,* No. 9:15-CV-1495 (MAD/DEP), 2016 WL 8732798 (N.D.N.Y. Oct. 7, 2016) ("Because defendants have provided no evidence that any Auburn official, including the grievance clerk, received plaintiff's grievances, provided them with numbers, or logged them, the factual circumstances in this case are, at least when drawing all inferences in favor of plaintiff, identical to those in *Williams*, where the plaintiff's grievances were both unfiled and unanswered."); *see Reid v. Marzano,* 9:15-CV-0761 (MAD/CFH), 2017 WL 1040420, at *3 (N.D.N.y. Mar. 17, 2017) (holding that the plaintiff's deposition testimony that he did not know how to proceed when he did not receive a response to his grievance is sufficient to withstand summary judgment on the issue of exhaustion).

Braxton's claim that he was unaware and confused as to how to pursue administrative remedies when his grievances were unfiled and unanswered is strengthened by the fact that Kirkpatrick responded to Braxton's February 23, 2017 appeal and directed Braxton to file "any complaint that [he] received directly with the IGP office."[6]  Dkt. No. 1-1 at 21. Dkt. No. 80-3 at 102-03, 129.  Braxton testified that "he already filed a grievance" and, after "waiting a reasonable time period," he appealed directly to Defendants.  *Id*. at 112, 130.

---

[6]    During Plaintiff's deposition, defense counsel produced a copy of the memorandum.  Dkt. No. 80-3 at 102.  However, the memorandum was not submitted in support of the motion for summary judgment and is not included anywhere in the record.

While the facts herein are distinguishable from *Williams and Cicio*, several courts in this district have applied *Williams* in similar scenarios, where the plaintiffs proffered less compelling evidence to support their contentions. *See Maldonado v. Mandalaywala*, No. 9:17-CV-1303 (BKS/TWD), 2020 WL 1159426, at *17–18 (N.D.N.Y. Feb. 12, 2020) (applying *Williams* despite the fact that the plaintiff was not confined in the SHU and did not submit any contemporaneous correspondence inquiring about the status of his grievance); *see Britt v. Carberry*, No. 9:17-CV-0234 (MAD/DEP), 2019 WL 3365766 (N.D.N.Y. Mar. 22, 2019) (applying *Williams* where the plaintiff filed grievances, while in the SHU, with the grievance office, but failed to follow up or appeal and failed to proffer copies of the grievances on the motion); *Jackson v. Downstate Corr. Facility*, No. 16-CV-0267, 2018 WL 3650136, at *8 (S.D.N.Y. July 31, 2018).

Defendants did not address the issue of unavailability or *Williams* and progeny. *See Jackson*, 2018 WL 3650136, at *8 (finding the defendants' failure to address *Williams* "disconcerting" given the precedential nature of the case and the fact that the plaintiff was a pro se litigant). The record, when viewed in the light most favorable to Braxton, suggests that his grievances were unfiled and unanswered, creating an issue of fact as to the availability of administrative remedies under *Williams*. *See Terry v. Hulse,* No. 16-CV-252, 2018 WL 4682784, at *9 (S.D.N.Y. Sept. 28, 2018) (denying summary judgment where the record contains sufficient detail regarding the plaintiff's attempts to file grievances) (collecting cases); *see also Thaxton v. Simmons*, No. 9:10-CV-1318 (MAD/RFT), 2013 WL 4806457, at

*4 (N.D.N.Y. Sept. 9, 2013) ("[A] question of fact exists as to whether [p]laintiff never filed his initial grievance on April 29, as [d]efendants claim, or that, as [p]laintiff claims, he filed a timely grievance that was lost or tampered with by [d]efendants.  Such credibility assessments are to be resolved by a trier of fact.").

Accordingly, the undersigned recommends that Defendants' Motion for Summary Judgment on this issue be denied, without prejudice and with the opportunity to renew by way of an exhaustion hearing, should Defendants request such a hearing.

### B.  Eighth Amendment Claims

Defendants move for summary judgment and dismissal of Braxton's Eighth Amendment claims arguing that there is no issue of fact concerning Defendants' alleged violation of Plaintiff's Eighth Amendment rights.  Dkt. No. 80-1 at 6-10.

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials.  *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "The Constitution does not mandate comfortable prisons but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).   Allegations of exposure to ETS or second hand smoke may form the basis for an Eighth Amendment claim.  *Helling v. McKinney*, 509 U.S. 25, 35 (1993).

"To prevail on [an] Eighth Amendment claim alleging 'serious medical problems

16

caused by exposure to ETS,' [a plaintiff] must 'prove both the subjective and objective elements necessary to prove an Eighth Amendment violation.' " *Colon v. Drew*, 335 Fed. App'x 86, 87 (2d Cir. 2009) (quoting *Helling*, 509 U.S. at 35). Allegations related to ETS exposure may involve claims based upon present harm and claims that the exposure will cause future harm. *Johnson v. Fischer*, No. 9:12-CV-0210 (DNH/TWD), 2015 WL 670429, at *9 (N.D.N.Y. Feb. 17, 2015). Here, Plaintiff alleges that he is suffering from present and will suffer future harm. *See* Am. Compl. at ¶ 76; Dkt. No. 80-3 at 70.

### 1. Objective Element

In cases involving present harm from ETS exposure, the objective component of the Eighth Amendment analysis is satisfied with evidence that the plaintiff suffers from a medical need or condition that is sufficiently serious. *McFadden v. Koenigsmann,* No. 18-CV-6684, 2020 WL 2542673, at *3 (W.D.N.Y. May 19, 2020). To be "sufficiently serious," the condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Gillespie v. Taylor*, No. 9:07-CV-0694 (GLS/GHL), 2009 WL 3165543, at *5 (N.D.N.Y. Sept. 28, 2009) (citations omitted). "Factors that have been considered include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.' " *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

With respect to future harm, to satisfy the objective element, a plaintiff must show that

he was exposed to unreasonably high levels of ETS.  *Davis v. New York*, 316 F.3d 93,100

(2d Cir. 2002) (citation omitted).  An analysis of this issue should focus on "whether levels of

ETS in the facility were so high that they violated contemporary standards of decency."

*Grayson v. Courtney*, No. 9:16-CV-1118 (GLS/ATB), 2018 WL 6933296, at *9 (N.D.N.Y. Dec.

3, 2018) (citation omitted).  In *Helling*, the Supreme Court explained:

> determining whether [plaintiff's] conditions of confinement
> violate the Eighth Amendment requires more than a scientific
> and statistical inquiry into the seriousness of the potential harm
> and the likelihood that such injury to health will actually be
> caused by exposure to ETS. It also requires a court to assess
> whether society considers the risk that the prisoner complains
> of to be so grave that it violates contemporary standards of
> decency to expose anyone unwillingly to such a risk. In other
> words, the prisoner must show that the risk of which he
> complains is not one that today's society chooses to tolerate.

*Helling*, 509 U.S. at 36 (emphasis in original).

It should be noted however, that the Supreme Court did not mandate smoke-free

prisons.  *Liggins v. Parker*, No. 9:04-CV-0966 (NAM/DEP), 2007 WL 2815630, at *17

(N.D.N.Y. Sept. 25, 2007) (citing *Scott v. District of Columbia*, 139 F.3d 940, 942 (D.C.Cir.),

*cert. denied sub nom., Dawson v. District of Columbia*, 525 U.S. 851, 119 S.Ct. 125 (1998)).

Defendants argue that Braxton's medical complaints are "relatively minor health

conditions" that were not caused by ETS exposure.  Dkt. No. 80-1 at 9.  Defendants also

contend that Braxton cannot establish an objectively serious risk of harm because his

exposure is "intermittent" and occurs "primarily at night and is limited to his cell and the

hallways on his block."  *Id.* at 8-9.

18

Braxton testified that he suffers from asthma, dizziness, and blackouts as a result of ETS exposure and proffered medical records supporting his allegations. *See* Dkt. No. 1-1 at 8-11; Dkt. No. 83 at 33, 135-36, 138; Dkt. No. 86 at 16-21; Dkt. No. 86-1 at 7-8; Dkt. No. 87 at 4. According to the record evidence, in June 2009, Plaintiff was treated at Bellevue Hospital for complaints related to ETS exposure. Dkt. No. 42-1 at 38. Plaintiff reported palpitations, lightheadedness, and "fading out" when exposed to cigarette smoke. *Id*. In 2016, while in DOCCS' custody, Plaintiff was prescribed Albuterol and Nasacort, and claims that the medication was necessary due to ETS exposure. Dkt. No. 1-1 at 1, 9. In 2017, Plaintiff, complained of respiratory distress, nose irritation, and "dry eyes" and was treated at sick call for complaints related to cigarette smoke. *Id.* at 10-11. The nurse scheduled an appointment with the medical provider and gave Braxton over-the-counter medications including "artificial tears" and nasal spray. *Id*. In June 2017, Plaintiff requested refills for Albuterol and Nasocort. *Id*. at 8. In September 2018, Plaintiff submitted a Request for a Reasonable Accommodation claiming that he has "fade-outs and/or light-headedness which requires [him] to sit or lie down." Dkt. No. 87 at 4. Braxton testified that he still suffers from "blackouts" twice each week. Dkt. No. 80-3 at 33.

It is undisputed that Braxton is housed in a single occupancy "six by nine" cell, without a window. Dkt. No. 80-3 at 21-25. Braxton testified that there is no "cross ventilation" because inmates put tape over the vents to prevent roaches from entering cells. *Id*. Braxton estimates that there are forty-six cells on six tiers in his dormitory and claims that

19

approximately 276 inmates, including the inmates in cells on either side of his cell, smoke throughout the night. *Id.* at 31-33. In addition, sergeants smoke in their areas, in hallways, and in "hideaways" were cameras cannot detect the smoke. *Id*. at 36, 38. Braxton describes the smoke as "intense" and "constant." Dkt. No. 80-3 at 33-34.

Defendants have not submitted any evidence contradicting Braxton's evidence. Considering these facts, a reasonable factfinder could conclude that Braxton suffered from "sufficiently serious" medical needs for purposes of the objective prong of his Eighth Amendment claim. *See Davis*, 316 F.3d at 100–01 (holding that allegations that smoke caused dizziness, difficulty breathing, blackouts, and respiratory problems are sufficient to create an issue of fact as whether the plaintiff's Eighth Amendment rights were violated); *see also Colon v. Drew*, No. 9:03-CV-1018 (LEK/DEP), 2011 WL 768979, at *1 (N.D.N.Y. Jan. 21, 2011) (finding asthma and shortness of breath due to ETS exposure to be sufficiently serious).

Moreover, Braxton's allegations related to the level of ETS exposure he endured are not contradicted by any documentary or testimonial evidence. Viewing the evidence in the light most favorable to Plaintiff, the Court finds genuine issues of material fact as to whether Plaintiff was exposed to unreasonably dangerous levels of ETS that violated contemporary standards of decency. *See Davis*, 316 F.3d at 101; *see Warren v. Keane*, 937 F.Supp. 301, 305 (S.D.N.Y. 1996), *aff'd and remanded*, 196 F.3d 330 (2d Cir. 1999) (finding the allegations sufficient to satisfy the objective element as the plaintiffs described an

20

environment permeated with smoke resulting from, *inter alia,* under-enforcement of inadequate smoking rules and poor ventilation); *McPherson v. Coombe*, 29 F.Supp. 2d 141, 145 (W.D.N.Y. 1998) (reasoning that a fact-finder could conclude that the plaintiff faced a risk of future harm where the plaintiff was incarcerated in a poorly ventilated housing unit with 41 other inmates with smoking permitted in all areas of the dormitory); *see Colon v. Drew*, 335 Fed App'x 86, 88 (2d Cir. 2009) (affirming district court denial of summary judgment on Eighth Amendment ETS claims reasoning that asthma and other minor health conditions, when viewed with allegations of poor ventilation and chain smoking, was sufficient to establish Helling's objective requirement).

## 2. Subjective Element

To satisfy the subjective requirement of an Eighth Amendment claim, the plaintiff must show that the defendant was deliberately indifferent to the plaintiff's medical needs or safety in exposing him to ETS, "determined in light of the prison authorities' current attitudes and conduct[.]" *Helling*, 509 U.S. at 36. When analyzing deliberate indifference, the Court will consider the adoption of a smoking policy. *See Candelaria v. Greifinger*, No. 96-CV-0017 (RSP/DS), 1997 WL 176314, at *6 (N.D.N.Y. Apr. 9, 1997) (citation omitted); *Colon v. Sawyer*, No. 9:03-CV-1018 (LEK/DEP), 2006 WL 721763, at *10 (N.D.N.Y. Mar. 20, 2006) ("Evidence of ongoing policies, notwithstanding plaintiff's claim that they are not rigidly enforced, somewhat undermines any claim of deliberate indifference."); *see also McPherson*, 2002 WL 35653924, at *4 ("The mere existence of a DOCCS smoking policy, without more,

21

serves to demonstrate that defendants are 'aware of facts which can lead to an inference that a risk of harm exists [and] facts exist where a jury can find that they have drawn the inference.' ") (citation omitted).

It is undisputed that, in January 2018, DOCCS adopted a Smoke Free Policy prohibiting smoking indoors by inmates and staff. *Denis v. N.Y.S. Dep't of Corr. Servs*., No. 05 CIV.4495, 2006 WL 217926, at *19 (S.D.N.Y. Jan. 30, 2006). Indeed, Plaintiff admits that Clinton C.F. adopted the non-smoking policy. Dkt. No. 80-3 at 42-46. Braxton testified however, that the policy was not enforced and, in fact, sergeants smoked indoors, in violation of the policy. Braxton also maintains that some officers issued only verbal reprimands. Dkt. No. 80-3 at 42-46. Braxton claims that Defendants were aware that the policy was not being enforced because they received his grievances, appeals, and Proposal and disregarded his complaints of "under-enforcement" and ignored his pleas regarding the risks to his "health, safety, and well-being." *Id*. at 1, 3, 4-5, 6-7, 12, 14-19.

Defendants cite to several cases in support of the conclusion that the "imperfect enforcement of a smoking policy alone may not support a finding of deliberate indifference." *See* Dkt. No. 80-1 at 9. The cases are readily distinguishable from the facts at hand.

In *Enigwe v. Zenk*, No. 03-CV-854, 2007 WL 2713849 (E.D.N.Y. Sept. 14, 2007), the court awarded summary judgment to the defendants because the plaintiff failed to proffer evidence that he suffered medical issues related to ETS exposure and failed to demonstrate that he informed officials that the non-smoking policy was being violated. *Id*. at *3-6. In

22

support of the motion, the defendants submitted a copy of the facility handbook and medical

records establishing that the plaintiff never informed the defendants that he was suffering

from conditions related to ETS exposure and never sought medical treatment for conditions

related to ETS. *Id*.

In *Johnson v. Goord*, No. 01 CIV. 9587, 2005 WL 2811776, at *6 (S.D.N.Y. Oct. 27,

2005), the court reasoned that summary judgment was appropriate because the defendant

submitted evidence in support of the motion including an affidavit with medical opinions

related to the plaintiff's medical condition and an affidavit related to the smoking policy.[7]

In *Davidson v. Desai*, No. 03-CV-121S, 2019 WL 125999, at *20-21, 32 (W.D.N.Y.

Jan. 8, 2019), *aff'd*, 964 F.3d 122 (2d Cir. 2020), the Court held a bench trial and received

testimony from the plaintiff, a corrections officer, the Superintendent, and medical personnel,

related to the implementation of a Smoke-Free Policy at Elmira C.F. and concluded that the

evidence established that the defendants implemented a non-smoking policy in good faith.

In this case, Defendants' motion lacks any documentary evidence or sworn testimony

related to Braxton's medical history, the smoking policies, the enforcement of the policies, or

evidence of disciplinary actions taken against inmates who violate the policies. As discussed

*supra*, as the movants on a motion for summary judgment, Defendants have the burden of

proving the absence of an issue of fact as to the Eighth Amendment claims. After carefully

---

[7]    The court was presented with the second motion for summary judgment related to ETS having
denied the defendants' prior motion because the defendants failed to present evidence demonstrating that the
plaintiffs' exposure to ETS did not present a sufficiently serious risk to their present or future health so as to rise
to the level of an Eighth Amendment violation. *Johnson*, 2005 WL 2811776, at *1.

considering the matter, the Court finds that genuine issues of material fact exist with regard to the subjective element of the Eighth Amendment analysis. *See McPherson v. Coombe*, No. 95-CV-6460, 2002 WL 35653924, at *3 (W.D.N.Y. Jan. 2, 2002) (denying summary judgment where the defendants failed to come forward with evidence demonstrating that smoking policies were implemented) (citations omitted); *but cf. Islam v. Connolly*, No. 07 CIV. 3225, 2011 WL 723568, at *9 (S.D.N.Y. Feb. 16, 2011) (dismissing claims related to ETS where the defendant submitted evidence including a copy of the policies, monthly reports of disciplinary actions, and log books documenting warnings issued to inmates); *Denis*, 2006 WL 217926, at *20 (finding issues of fact related to the efficacy of the smoking policy where the plaintiff testified that smoking was pervasive in housing units and in inmate bathrooms); *see Gill v. Smith*, 283 F.Supp.2d 763, 769 (N.D.N.Y. 2003) (denying summary judgment where the plaintiff made requests to the defendant to stop smoking).

Thus, Defendants' motion, on this ground, should be denied.

### C.  Personal Involvement

Defendants argue that Braxton has failed to establish that Defendants were personally involved in the alleged Eighth Amendment violations. *See* Dkt. No. 80-1 at 10.

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show

"a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hendrickson v. U.S. Attorney Gen*., 91-CV-8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994).

If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct.  *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501.  In other words, supervisory officials may not be held liable merely because they held a position of authority.  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).  Prior to *Iqbal*, the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the alleged constitutional violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing

*Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).[8]  Here, Plaintiff alleges that Defendants were personally involved pursuant to the second and fourth *Colon* factors.[9]  *See* Am. Compl. at ¶¶ 57, 58.

Braxton alleges that Defendants failed to remedy the violations after receiving his appeals, grievances, letters, and Proposal.  *See* Am. Compl. at ¶¶ 57, 58.  Allegations that a supervisory defendant received letters and grievances, without more, is insufficient to establish personal involvement.  *Woods v. Goord*, No. 01 Civ. 3255, 2002 WL 731691, *7 (S.D.N.Y. Apr. 23. 2002); *Johnson v. Wright*, 234 F.Supp.2d 352, 363 (S.D.N.Y. 2002) ("[I]f mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose respondeat superior liability.") (citations omitted); *Zaire v. Artuz*, No. 99 CIV. 9817, 2003 WL 230868, at *7 (S.D.N.Y. Feb. 3, 2003) (reasoning that mailing two grievances does not, by itself, establish personal

---

[8]        The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability.  *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) *see e.g., Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]") (citing *Grullon*, 720 F.3d at 139).  Courts in this District have concluded that "the Colon analysis still applies where the constitutional claim asserted does not require a showing of discriminatory intent, 'insofar as it is consistent with the particular constitutional provision alleged to have been violated.' "  *Montanez v. City of Syracuse*, No. 16-CV-0550, 2019 WL 315058, *18 (N.D.N.Y. Jan. 23, 2019) (internal quotation marks and citation omitted). Here, Plaintiff's Eighth amendment deliberate indifference claims do not require a showing of discriminatory intent.  Therefore, the Court will apply the *Colon* factors. *Santana v. Racette*, No. 9:17-CV-00102 (BKS/ML), 2020 WL 3412728, at *8 (N.D.N.Y. June 22, 2020) (citation omitted).

[9]        Defendants do not address the fourth *Colon* factor in their motion for summary judgment.

involvement on the part of the defendant in ETS exposure).  "[E]ven if a complaint or letter is directly addressed to the defendant and the defendant becomes subjectively aware of the alleged problem, if the defendant lacks the authority to remedy or take action with respect to any constitutional violation, personal involvement cannot be found."  *Eldridge v. Williams*, No. 10 CIV. 0423, 2013 WL 4005499, at *5 (S.D.N.Y. July 30, 2013) (internal quotation marks and citations omitted).

Under the fourth *Colon* factor, a plaintiff must establish that the defendants were "grossly negligent in supervising subordinates who committed the wrongful acts." *Colon*, 58 F.3d at 873.  The Second Circuit has "defined gross negligence as conduct that demonstrates a 'heedless indifference to consequences to another,' meaning the 'kind of conduct . . . where [the] defendant has reason to know of facts creating a high degree of risk of physical harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk.' " *Estate of Chamberlain*, 2020 WL 2820176, at *13 (quoting *Bryant v. Maffucci*, 923 F.2d 979, 985 (2d Cir. 1991)).

In this case, Braxton wrote letters to each Defendant in April 2017 and provided copies of his February 2017 grievance and a copy of his proposal for a non-smoking dormitory.  Dkt. No. 80-3 at 68, 112; Dkt. No. 1-1 at 23-29.  Defendants do not confirm or deny receipt of the letters.  Because "liability may be premised upon grossly negligent supervision of others, personally ignoring evidence of constitutional wrongdoings or creating a policy or custom under which unconstitutional practices occurred, or allowing the

continuance of such a policy or custom," Defendants have not established that they are entitled to judgment as a matter of law. *Johnson v. Goord*, No. 01 CIV. 9587, 2004 WL 2199500, at *17 (S.D.N.Y. Sept. 29, 2004) (denying motion for the supervisory defendants on the ETS exposure claim for failure to demonstrate "entitlement to summary judgment").  In this respect, Defendants failed to produce any documentary evidence or sworn affidavits/testimony demonstrating the absence of genuine issues of material fact.

As discussed *supra*, "where the movant fail[s] to fulfill its initial burden of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, even if no opposing evidentiary matter is presented, for the non-movant is not required to rebut an insufficient showing."  *Giannullo v. City of New York*, 322 F.3d 139, 140–41 (2d Cir. 2003) (citations and internal quotation marks omitted). Because Defendants moved for summary judgment and have not met their initial burden, the burden does not shift to Plaintiff to raise an issue of material fact.  *See Harvey v. Farber*, No. 9:09-CV-00152 (MAD/GHL), 2011 WL 5373756, at *6 (N.D.N.Y. Sept. 29, 2011) *report and recommendation adopted in part, rejected in part,* 2011 WL 5373736 (N.D.N.Y. Nov. 4, 2011); *see also Gilmore v. Fitzmaurice*, No. 9:16-CV-1300 (DNH/TWD), 2018 WL 4178227, at *9 (N.D.N.Y. May 31, 2018) ("[A]lthough not necessarily dispositive, the summary judgment record lacks a declaration or affidavit from [the defendant] denying his alleged personal involvement.").

Accordingly, it is recommended that Defendants' motion, on this ground, be denied.

### D.  Qualified Immunity

In the alternative, Defendants argue that they are entitled to qualified immunity on the Eighth Amendment ETS claim.  *See* Dkt. No. 80-1 at 11-12.

Qualified immunity shields federal and state officials from suit " 'unless [1] the official violated a statutory or constitutional right that [2] was clearly established at the time of the challenged conduct.' "  *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  "A right is 'clearly established' if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' "  *Beckles v. City of New York*, 492 Fed. App'x 181, 182 (2d Cir. 2012) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

To determine whether a state official is entitled to qualified immunity for acts taken during the course of his or her employment, a reviewing court is to determine: " '(1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was clearly established; and (3) even if the right was clearly established, whether it was objectively reasonable for the [official] to believe the conduct at issue was lawful.' "  *Phillips v. Wright*, 553 Fed. App'x 16, 17 (2d Cir. 2014) (quoting *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013)).  "Even if the right at issue was clearly established in certain respects, however, an officer is still entitled to qualified immunity if 'officers of reasonable competence could disagree' on the legality of the action at issue in its particular factual context."  *Doe v. Lima*, 270 F.Supp.3d 684, 710 (S.D.N.Y. 2017) (citations omitted), *aff'd sub*

*nom. Doe v. Cappiello*, 758 Fed. App'x 181 (2d Cir. 2019).

Here, the record contains genuine issues of material fact as to the Eighth Amendment claims. As such, the first prong of the analysis has been met.

With respect to the second prong, "after *Helling*, it was clearly established that prison officials could violate the Eighth Amendment through deliberate indifference to an inmate's exposure to levels of ETS that posed an unreasonable risk of future harm to the inmate's health." *Warren v. Keane*, 196 F.3d 330, 333 (2d Cir. 1999). "When the contours of a plaintiff's rights were clearly defined at the time of the underlying incident, a public official may still assert the defense of qualified immunity if the official reasonably believed that his or her actions did not violate the plaintiff's rights." *Scott v. Hollins*, No. 96-CV-0351C, 2006 WL 1994757, at *9 (W.D.N.Y. July 14, 2006) (citing *Warren*, 196 F.3d at 333).

Defendants argue that it was objectively reasonable to believe that the "imperfect enforcement of Clinton's no-smoking policy did not violate Plaintiff's constitutional rights." Dkt. No. 80-1 at 11-12. Assuming Braxton's allegations to be true, despite the existence of a no-smoking policy, he was exposed to unreasonably high levels of ETS.

Therefore, the Court recommends denying Defendants' motion, on this ground. *See Shepherd v. Hogan*, 181 Fed. App'x 93, 97 (2d Cir. 2006) (holding that qualified immunity is inappropriate as to ETS claims under the Eighth Amendment).

## IV.  CONCLUSION

**WHEREFORE**, based on the findings set forth above, it is hereby:

30

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 80) be

**DENIED**; and it is further

**ORDERED** that copies of this Report-Recommendation and Order be served on the

parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[10] days within which

to file written objections to the foregoing report. Such objections shall be filed with the Clerk

of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS**

**WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir.

1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989));

28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.


DATED: August 24, 2020



Miroslav Lovric
U.S. Magistrate Judge


---

[10]    If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(c).

31