**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

BENJAMIN BRAXTON a/k/a
OBED/EDOM BRAXTON,

                                         Plaintiff,

v.

KEVIN BRUEN, et al.,

                                         Defendants.

9:17-cv-1346 (BKS/ML)

---

**Appearances:**

*Plaintiff pro se:*
Benjamin Braxton
16-A-2314
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562

*For Defendants:*
Letitia James
Attorney General of the State of New York
Robert J. Rock
Office of Attorney General-Albany
Department of Law
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff Benjamin Braxton a/k/a Obed Edom, an inmate who was, at all relevant times, in

the custody of the New York Department of Corrections and Community Supervision

("DOCCS"), brings this action under 42 U.S.C. § 1983 alleging that he[1] has been exposed to unreasonable levels of secondhand smoke during his incarceration, in violation of the Eighth Amendment. (Dkt. No. 42).[2] Plaintiff names as Defendants DOCCS Deputy Commissioner of Counsel Kevin Bruen, Deputy Commissioner of Program Services Jeff McKoy, Deputy Commissioner of Facility Operations Joseph Bellnier,[3] Deputy Commissioner of Administrative Services Daniel F. Martuscello, III, and Deputy Commissioner Chief Medical Officer Carl K. Koenigsmann. (*Id.*).

Defendants moved for summary judgment under Fed. R. Civ. P. 56 on February 21, 2020, and Plaintiff opposed that motion. (Dkt. Nos. 80, 86). On August 24, 2020, United States Magistrate Judge Miroslav Lovric issued a Report-Recommendation recommending that Defendants' motion be denied. (Dkt. No. 88). The Court adopted the Report-Recommendation on September 25, 2020, and denied Defendants' motion. (Dkt. No. 89). In light of the Second Circuit's decision in *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020) (decided December 28, 2020), the Court granted Defendants' request to file a supplemental motion for summary judgment on the limited issue of personal involvement. (Dkt. No. 101). Presently before the Court is Defendants' supplemental motion for summary judgment, (Dkt. No. 106), and Plaintiff's response, (Dkt. No. 109). For the reasons discussed below, Defendants' supplemental motion for summary judgment is granted.

---

[1] The record indicates that Plaintiff identifies as gender non-conforming and alternates between using the pronouns "he" and "she." (*See, e.g.*, Dkt. No. 42, at ¶¶ 14 ("Plaintiff stated he was gender non-conforming"), 31 ("Plaintiff notified Superintendent that she was afraid for her safety")). As Plaintiff used "he" in his memorandum of law in opposition to the present motion for summary judgment, (Dkt. No. 109), the Court will follow suit.

[2] The operative pleading is Plaintiff's Amended Complaint, (Dkt. No. 42), as modified by the Court's November 15, 2018 Decision and Order, (Dkt. No. 41), which denied the inclusion of new Eighth Amendment claims against new defendants unrelated to Plaintiff's exposure to second-hand smoke, (*id.* at 8).

[3] The Clerk is respectfully requested to correct the spelling on the docket for Defendant Bellnier, who was named in the Amended Complaint as "Belinier," but who signed his affidavit "Bellnier." (Dkt. Nos. 42, 106-4).

## II.   FACTS[4]

Plaintiff alleges that he was exposed to Environmental Tobacco Smoke ("ETS") while incarcerated at Downstate Correctional Facility ("Downstate"), and Clinton Correctional Facility ("Clinton") between 2016 and 2017, even though "starting in 1999, DOCCS adopted a smoke free policy . . . [and a]s part of this policy, smoking was strictly prohibited within all facility buildings." (Dkt. No. 106-7, at ¶ 10; Dkt. No. 42, at ¶¶ 60–62). At Downstate, Plaintiff alleges that he was housed in a cell with smokers who smoked "4–5 packs of cigarettes each day." (Dkt. No. 42, at ¶ 60). When Plaintiff washed his t-shirts at night they would "be beige in color in the morning" from the smoke. (*Id.*). Plaintiff would "awaken at night wheezing and coughing from the smoke of the smokers that surrounded his cell." (*Id.* at ¶ 61). At Clinton, Plaintiff reports that the "majority of the inmates are smokers," and that the smoke "rises like a ghostly apparition -- lingering, and filling her lungs with its toxic gas." (*Id.* at ¶ 62; Dkt. No. 42-1, at 15; Dkt. No. 80-3, at 43–44). Inmates "block the vents for fear of roaches in the system," leading to poor ventilation, and the DOCCS smoking policy was "not enforced adequately." (Dkt. No. 1-1, at 1; Dkt. No. 80-3, at 45). Officers would smoke inside the facility as well, "in the hallways" and "hideaways . . . where the camera can't detect them." (Dkt. No. 80-3, at 35–37).

Plaintiff asserts that exposure to ETS has caused him to experience several health problems. He has had "asthma" and "sinus issues," has been "sneezing a lot," and his nose burns; he has been prescribed Nasacort and albuterol and has used Visine. (Dkt. No. 1-1, at 8–11, 22;

---

[4] The underlying facts are set forth in Magistrate Judge Lovric's Report-Recommendation. (Dkt. No.88). The Court assumes familiarity with those facts, which are incorporated herein, and recounts additional facts, which are relevant to the personal involvement determination, as necessary. Plaintiff failed to respond to Defendants' Statement of Material Facts, (Dkt No. 106-2), with a response mirroring their assertions, and admitting or denying each assertion, as required by Local Rule 56.1(b). The Court has, in its discretion opted to overlook Plaintiff's violation of the local rules and conducted a review of the entire record. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001). The facts are construed in the light most favorable to Plaintiff as the non-moving party. *Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007).

Dkt. No. 42-1, at 15, 41). He has also experienced episodes of "fading out" and dizziness, and he experiences "blackouts" twice each week because of exposure to ETS. (Dkt. No. 42, at ¶¶ 80–81; Dkt. No. 42-1, at 40; Dkt. No. 80-3, at 33).

The parties dispute whether Plaintiff ever properly submitted grievances regarding ETS. Plaintiff testified that he filed two grievances, and several follow-up letters seeking to appeal, after he received no response to the grievances. Plaintiff testified that he filed the first grievance on October 5, 2016 at Clinton complaining of the "underenforcement of NYS non-smoking policy." (Dkt. No. 1-1, at 1; Dkt. No. 80-3, at 81–84) ("October 5, 2016 grievance").[5] On October 12, 2016, after receiving no response, Plaintiff wrote to the IGRC Supervisor, stating that he was appealing his grievance and attaching the October 5, 2016 grievance. (Dkt. No. 1-1, at 2; Dkt. No. 80-3, at 84–85). After he did not receive a response to this letter, he wrote to the Superintendent of Clinton on October 21, 2016, again attaching his grievance, and requested that the Superintendent "intervene in this matter." (Dkt. No. 1-1, at 3; Dkt. No. 80-3, at 84–85). Finally, after receiving no response from the Superintendent, he wrote two letters on October 31, 2016 addressed to the State Commission of Corrections in Albany: one to the attention of DOCCS Commissioner Anthony Annucci, and one with the salutation "Dear IGRC Administrator." (Dkt. No. 1-1, at 4–7; Dkt. No. 80-3, at 86–87). Both letters stated that Plaintiff was appealing the October 5, 2016 grievance. (Dkt. No. 1-1, at 6). In both letters, Plaintiff asked that Clinton "conduct a survey for the practicality of a non-smoking dormitory" in order to "avoid further deterioration" of his health. (Dkt. No. 1-1, at 4–7). At the end of the letter addressed to the "IGRC Administrator," Plaintiff wrote "CC: File" and listed the names of the

---

[5] Plaintiff attached as exhibits to the complaint the two grievances, as well as several follow-up letters. (Dkt. 1-1).

five Defendants in this case. (*Id.* at 6–7). Plaintiff testified that he sent this to the five Defendants. (Dkt. No. 80-3, at 109).

Plaintiff testified that he submitted the second grievance on February 11, 2017 at Clinton, by placing it in the appropriate box ("February 11, 2017 grievance"). (Dkt. No. 1-1, at 12; Dkt. No. 80-3, at 119). Plaintiff requested "a survey to determine the compatibility of a non-smoking dormitory" at the facility and attached to the grievance a "Proposal for Non-Smoking Dormitory." (Dkt. No. 1-1, at 13–19). After receiving no response to this grievance, he wrote to the IGRC Supervisor at Clinton on February 17, 2017, stating that he was appealing his February 2017 grievance. (Dkt. No. 1-1, at 20; Dkt. No. 80-3, at 99). After receiving no response from the IGRC Supervisor, Plaintiff wrote to the Superintendent of Clinton on February 23, 2017, requesting a survey for a non-smoking dormitory and enclosing his proposal; on the subject line, Plaintiff wrote "grievance appeal." (Dkt. No. 1-1, at 21; Dkt. No. 80-3, at 100–01). The Superintendent's office stamped this letter as "received" on February 24, 2017. (Dkt. No. 1-1, at 21). The Superintendent responded in a memorandum dated February 24, 2017, advising Plaintiff to "submit any grievances, or appeals directly to I.G.P. [Inmate Grievance Program] office." (Dkt. 80-3, at 102, 112–114).[6] Plaintiff testified that he did not submit his grievance to the IGP, after receiving this response from the Superintendent, because he had "already done it." (*Id.* at 130).

Plaintiff has submitted evidence that on April 19, 2017, he sent letters by regular mail to each of the five Defendants who made up the Central Office Review Committee ("CORC") individually at their offices. (Dkt. No. 1-1, at 23–33; Dkt. No. 80-3, at 60). Plaintiff identified the

---

[6] The memorandum from the Supervisor is not included in the record, although it appears that the Defendants produced it to Plaintiff in discovery. (Dkt. No. 80-3, at 102).

Defendants as CORC members because 7 NYCRR § 701.5 lists the position of each of the members of CORC, and the name and contact information of the individuals currently holding those positions were listed in the "2016-2017 Lawyer's Diary and Manual." (Dkt. No. 109; Dkt. No 80-3, at 58–60). In the letters, Plaintiff wrote that he was appealing an attached February 11, 2017 grievance, and enclosed his proposal for a non-smoking dormitory. (Dkt. No. 1-1, at 23–33).

Defendants deny knowledge or receipt of any letters from Plaintiff regarding ETS exposure. They contend that they "never personally served as [] voting member[s] of CORC," because they had "multiple designees who were authorized to act on [their] behalf that served on a rotating basis with CORC." (Dkt. No. 106-3, at 3 (Koenigsmann Declaration); Dkt. No. 106-4, at 2 (Bellnier Declaration); Dkt. No. 106-5, at 2 (McKoy Declaration); Dkt. No. 106-6, at 2 (Martuscello Declaration); Dkt. No. 106-7, at 2 (Bruen Declaration)). Defendants each deny ever "reviewing, investigating, or responding to correspondence written by Plaintiff" or "otherwise becoming aware of the subject matter of the complaints alleged in this lawsuit." (Dkt. No. 106-3, at 3; Dkt. No. 106-4, at 2; Dkt. No.106-5, at 2; Dkt. No. 106-6, at 2; Dkt. No. 106-7, at 2). In his declaration, Defendant Koenigsmann states that his office "routinely received several thousand letters per year addressed to [him] from inmates in DOCCS custody . . . [t]he normal and ordinary procedure of the office was for [his] administrative staff to review correspondence and, based upon its content, determine which Division of Health Services official to whom the correspondence should be forwarded." (Dkt. No. 106-3, at 2).

Defendants assert that they were not "involved in the enforcement of policies at Clinton," and they "did not personally enforce the anti-smoking policy at Clinton, or any other facility, nor [were they] aware of any discrepancies in its enforcement by facility staff." (Dkt. No. 106-3, at

6

3; Dkt. No. 106-4, at 3; Dkt. No. 106-5, at 3; Dkt. No. 106-6, at 3; Dkt. No. 106-7, at 3).

Defendant Koenigsmann states that he worked "within the Division of Health Services and [his]

responsibilities included policy development and implementation of medical policies and

practices related to the medical care." (Dkt. No. 106-3, at 2). He asserts that he "did not

personally provide medical care to individual inmates." (*Id.*). Defendant Bellnier states in his

declaration that he was "charged with the overall operational and security management, direction

and oversight of over 60 DOCCS operated correctional facilities." (Dkt. No. 106-4, at 1).

Defendant McKoy oversees the "programs and services offered to incarcerated individuals to

assist them in redirecting their lives and becoming productive, law-abiding members of society."

(Dkt. No. 106-5, at 2). Defendant Martuscello asserts in his declaration that he "oversaw the

supervision of budget and finance, facilities planning, personnel, support operations, nutritional

services, and the training academy." (Dkt. No. 106-6, at 2). Defendant Bruen "oversaw the

Office of Counsel which provided legal support and services to DOCCS." (Dkt. No. 106-7, at 1).

Therefore, each Defendant describes DOCCS' non-smoking policy as a "facility level issue,"

outside the purview of their supervisory positions at DOCCS. (Dkt. No. 106-3, at 3; Dkt. No.

106-4, at 3; Dkt. No. 106-5, at 3; Dkt. No. 106-6, at 3).

The Defendants submitted evidence of searches in the IGP and CORC databases, which

show no record of a grievance or appeal to CORC by Plaintiff regarding ETS. (Dkt. Nos. 80-5 to

80-8 (containing copies of computer printouts from the databases, and affidavits from the

Assistant Director of IGP and the IGP Supervisor at Clinton stating that the computer searches

demonstrate that they "did not receive, nor ha[ve they] ever received" any grievances or appeals

from Plaintiff regarding ETS beginning in 2016)).[7]

---

[7] The Assistant Director of the Inmate Grievance Program explained, in a declaration submitted in support of the
motion for summary judgment, that the inmate grievance process involves three steps: First, the inmate must "file a

III.    STANDARD OF REVIEW

Under Rule 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (explaining that summary judgment is appropriate where the nonmoving party fails to "'come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an essential element of a claim" (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir.2010))).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323–24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary

---

complaint with the IGRC"; "if the inmate is dissatisfied with the IGRC recommendation, the inmate may appeal it to the Superintendent of the facility," and "must [] submit[] the request directly to the IGRC at the facility"; finally, "if dissatisfied with the Superintendent's response, the inmate may appeal the decision to CORC [the Central Office Review Committee]", and [t]he request to appeal to CORC must also be submitted directly to the IGRC at the facility . . . for forwarding to CORC." (Dkt. No. 80-5, at 2–3).

judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

Where the plaintiff proceeds pro se, the Court must read his submissions liberally and interpret them "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). However, a pro se party's "'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Jordan v. New York*, 773 F. Supp. 2d 255, 268 (N.D.N.Y. 2010) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)); *see also Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011).

## IV.   DISCUSSION

In the Amended Complaint, Plaintiff alleges that Defendants: 1) failed to "remedy the violation after learning" that "Plaintiff was exposed to unreasonable high levels of involuntary exposure to environmental tobacco smoke" from Plaintiff's grievances, appeals and proposal regarding a "non-smoking dormitory"; 2) exhibited "gross negligence of supervisory control in managing prison officials/subordinates with respect to underenforcement of non-smoking

policy"; and 3) "exhibited deliberate indifference to the right of inmates by failing to act on information indicating that unconstitutional acts were occurring." (Dkt. No. 42, ¶ 58).

The sole issue before the Court is whether, in light of *Tangreti*, Plaintiff has raised a material issue of fact as to Defendants' personal involvement in these alleged violations of Plaintiff's Eighth Amendment rights. "It is well settled in [the Second] Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotations omitted). In *Tangreti*, the Second Circuit recognized that, after *Ashcroft v. Iqbal*, there is "no special test for supervisory liability." 983 F.3d at 618 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Instead, a plaintiff "must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Specifically, for Eighth Amendment deliberate indifference claims, a plaintiff must show that the prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 619 (internal quotations omitted).[8]

There is evidence that Plaintiff cc'd each of the Defendants in a letter Plaintiff wrote to the "State Commission of Correction" on October 31, 2016. (Dkt. No. 1-1, at 6–7 (letter stating that it is an "appeal from a grievance" filed on October 5, 2016 and requesting that Clinton "conduct a survey to determine the feasibility of a Non-Smoking Dormitory" because Plaintiff has "always been housed with inmates that the majority were smokers")). There is also evidence

---

[8] Plaintiff also alleged "gross negligence of supervisory control in managing prison officials/subordinates with respect to underenforcement of non-smoking policy." (Dkt. No. 42, ¶ 58). Although negligent supervision was one of the ways under *Colon* for establishing personal involvement in a constitutional violation under § 1983, after *Tangreti*, Plaintiff must prove that the individual Defendants themselves showed deliberate indifference. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

that Plaintiff mailed letters to each Defendant individually on April 19, 2017, stating that

Plaintiff is "appealing a grievance dated February 11, 2017" and attaching both his grievance and

Proposal. (Dkt. No. 1-1, at 23–33). In their declarations, each Defendant states that he has no

recollection of "ever reviewing, investigating, or responding to correspondence written by

Plaintiff" and that he was not "aware of the subject matter of the complaints alleged in this

lawsuit prior to being apprised of the existence of this litigation." (Dkt. No. 106-3, ¶ 12; Dkt. No.

106-4, ¶ 9; Dkt. No. 106-5, ¶ 9; Dkt. No. 106-6, ¶ 8; Dkt. No. 106-7, ¶ 9). Plaintiff does not offer

any proof that Defendants personally received his letters; nor does he offer any evidence that

Defendants responded to or otherwise acted upon these letters.

Even before *Tangreti*, receipt by a supervisory official of a letter from an inmate, without

more, has been insufficient to establish the official's personal involvement in a § 1983

constitutional claim. *Jones v. Annucci*, No. 16-cv-3516, 2018 WL 910594, at *11–12, 2018 U.S.

Dist. LEXIS 24359, at *36–*41 (S.D.N.Y. Feb. 14, 2018) (noting that Acting Commissioner of

DOCCS Anthony Annucci's failure to respond to the plaintiff's letter complaining of

unconstitutional conduct, "without more, does not plausibly allege his personal involvement"

and citing cases); *Cole v. New York State Dep't of Corr. & Cmty. Supervision*, No. 14-cv-0539,

2016 WL 5394752, at *29, 2016 U.S. Dist. LEXIS 114872, at *91 (N.D.N.Y. Aug. 25, 2016)

("[E]ven assuming [a prison official] received plaintiff's letters, [the official's] failure to respond

to them is not sufficient to give rise to personal involvement under § 1983."), *report and*

*recommendation adopted by* 2016 WL 5374125, 2016 U.S. Dist. LEXIS 130962 (N.D.N.Y. Sept.

26, 2016); *Houston v. Schiroro*, No. 11-cv-7374, 2014 WL 6694468, at *14, 2014 U.S. Dist.

LEXIS 165409, at *37 (S.D.N.Y. Nov. 26, 2014) ("[R]eceipt of a grievance does not constitute

personal involvement."); *Walker v. Pataro*, No. 99-cv-4607, 2002 WL 664040, at *12, 2002 U.S.

Dist. LEXIS 7067, at *42 (S.D.N.Y. Apr. 23, 2002) ("[W]here a supervisory official like the Commissioner of Corrections . . . receives letters or similar complaints from an inmate and does not personally respond, the supervisor is not personally involved and hence not liable. On the other hand, where a supervisor receives an inmate grievance or other complaint and responds to it, the supervisor may be liable . . . the Commissioner and individual prison Superintendents receive innumerable letters and other forms of inmate complaints and delegate subordinates to handle them . . . Thus, if mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose *respondeat superior* liability.").

Here, even assuming the Defendants received Plaintiff's mailings, and failed to act, such evidence would be insufficient to establish personal involvement. *See Smart v. Annucci*, No. 19-cv-7908, 2021 WL 260105, at *5, 2021 U.S. Dist. LEXIS 14339, at *14 (S.D.N.Y. Jan. 26, 2021) ("That [Defendants] failed to act on Plaintiff's complaints . . . cannot support the inference that these Defendants, through '[their] own individual actions, [have] violated the Constitution.'").[9]

---

[9] Plaintiff and Defendants disagree about the significance of *Johnson v. Fischer*, No. 12-cv-0210, 2015 WL 670429, 2014 U.S. Dist. LEXIS 182153 (N.D.N.Y. Aug. 5, 2014), *report and recommendation adopted by* No. 12-cv-0210, 2015 WL 670429, 2015 U.S. Dist. LEXIS 18601 (N.D.N.Y. Feb. 17, 2015). In that case, the Court found no triable issue as to the personal involvement of the DOCCS Commissioner, who was allegedly a member of the CORC panel, because "there [was] no evidence in the record that [the Commissioner] reviewed Plaintiff's grievances about the smoking issue or that he was made aware of the alleged violations of the smoking policy," and "Plaintiff's mere belief that [the Commissioner] reviewed his grievances [was] insufficient to establish [his] personal involvement." *Id.* at 2015 WL 670429, at *7, 2014 U.S. Dist. LEXIS 182153, at *19. Plaintiff distinguishes this case from *Johnson*, arguing that while in *Johnson* there was "no evidence" that the Defendant Commissioner "reviewed Plaintiff's grievance," here "Plaintiff mailed his grievance 'independently,' 'separately' 'particularly'" to the Defendants. (Dkt. No. 109, ¶¶ 5, 9, 15, 21). However, in *Johnson*, the CORC had reviewed and denied the Plaintiff's grievance, but because the CORC decision was unsigned, there was "no evidence" that the Defendant had personally reviewed the grievances. 2015 WL 670429, at *7, 2014 U.S. Dist. LEXIS 182153, at *19. This is, in fact, analogous to the case at hand; while the evidence supports that Plaintiff mailed letters to Defendants, the evidence does not support that Defendants personally reviewed the letters.

Plaintiff further contends that Defendants were aware of Plaintiff's complaints by virtue

of their positions as voting members of CORC. (Dkt. No. 110, at 3–4). Defendants deny that

CORC "received or decided any grievance appeals related to Braxton's underlying allegations in

this case related to second-hand smoke." (Dkt. No. 106-1, at 5). However, again, even assuming

that the Plaintiff's submissions were received by the Defendant individual CORC members,

Plaintiff has failed to establish the individual Defendant's personal involvement. Each Defendant

avers in his declaration he never personally served as a voting member of CORC and instead had

designees serve on the committee in his place. (Dkt. No. 106-1, at 5; Dkt. No. 106-3, at 3; Dkt.

No. 106-4, at 2; Dkt. No. 106-5, at 2; Dkt. No. 106-6, at 2; Dkt. No.106-7, at 2). Without more,

there is no basis for finding Defendants' deliberate indifference.[10] *Cf. Eldridge v. Williams*, No.

10-cv-0423, 2013 WL 4005499, at *6, 2013 U.S. Dist. LEXIS 107555, at *17–18 (S.D.N.Y. July

30, 2013) (finding sufficient evidence to establish the Deputy Superintendent for Health's

personal liability when he received a letter from a plaintiff asserting that doctors had

"threatened" to place her in a special housing unit to "provide her with a smoke-free

environment" because of her "asthmatic condition," and he responded to the plaintiff's letter, but

"allegedly failed to subsequently ensure that [she] would be able to live in a smoke-free

environment").

Plaintiff argues that each Defendant was "'aware' of the general issue of ('ETS')" based

on 1) the enactment of prison anti-smoking policies which reflects a "recognition" on the part of

---

[10] In the Report-Recommendation, the Magistrate Judge considered whether liability could be premised on the Defendants' grossly negligent supervision of others, and concluded that Defendants failed to establish their entitlement to judgment as a matter of law where Defendants did not confirm or deny receipt of the letters and "failed to produce any documentary evidence or sworn affidavits/testimony demonstrating the absence of genuine issues of material fact." (Dkt. No. 88, at 27–28). Because the standard for personal involvement post-*Tangreti* requires a showing "that each Government-official defendant, through the official's own individual actions, has violated the Constitution," 983 F.3d at 618, and Defendants have now each filed declarations, the Court reaches a different conclusion.

DOCCS officials of the need to protect inmates from ETS; and 2) the U.S. Surgeon General's "notice of the dangers of ETS." (Dkt. No. 109, at 4). However, Plaintiff's allegations regarding general knowledge of prison policies or warnings issued by the U.S. Surgeon General, are insufficient to demonstrate personal involvement under § 1983. *See Kravitz v. Leis*, No. 17-cv-600, 2019 WL 1332774, at *8, 2019 U.S. Dist. LEXIS 22714, at *18 (N.D.N.Y. Feb. 11, 2019) (finding the defendant's "general knowledge" of the plaintiff's religious affiliation "insufficient to demonstrate personal involvement," explaining that "in order to prevail on a § 1983 cause of action . . . a plaintiff must show some 'tangible connection' between the unlawful conduct and the defendant" (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)), *report and recommendation adopted by* 2019 WL 1331999, 2019 U.S. Dist. LEXIS 48592 (N.D.N.Y. Mar. 25, 2019)).

In support of his argument that Defendants were personally involved in the alleged constitutional violation, Plaintiff cites *Scott v. Hollins*, where, he claims, Defendant Bellnier[11] was found to be "'aware' of the general issue of ('ETS') and [to have] allowed the continuation of a smoking policy that violated Plaintiff's Eighth Amendment rights.'" (Dkt. No. 109, at 4 (citing No. 96-cv-0351, 2006 WL 1994757, at *7, 2006 U.S. Dist. LEXIS 47998, at *22 (W.D.N.Y. July 14, 2006))).[12] That another court may have found that there was evidence that

---

[11] In *Scott v. Hollins*, there is a defendant named "Belliner," who was Superintendent of Livingston Correctional Facility. No. 96-cv-0351, 2006 WL 1994757, at *7, 2006 U.S. Dist. LEXIS 47998, at *22 (W.D.N.Y. July 14, 2006). There is no evidence that Bell*iner* and Defendant Bell*nier* in this case, are the same. Even if they are, however, Plaintiff's argument is without merit for the reasons discussed above.

[12] Plaintiff cites *Denis. v. N.Y.S. Department of Correctional Services*, where, Plaintiff claims, Defendant McKoy was also named as a defendant in connection with a DOCCS inmate's ETS deliberate indifference to serious medical needs claim. (Dkt. No. 109, at 14 (citing *Denis. v. N.Y.S. Dep't of Corr. Servs.*, No. 05-cv-4495, 2006 WL 217926, at *1–2, 2006 U.S. Dist. LEXIS 3118, at *1–2 (S.D.N.Y. Jan. 30, 2006), *report and recommendation adopted by* 2006 WL 406313 (S.D.N.Y. Feb. 22, 2006))). In *Denis*, the defendant was "Joseph McCoy," 2006 WL 217926, at *1, 2006 U.S. Dist. LEXIS 3118, at *1, here the named defendant is "*Jeff* Mc*Koy*." (Dkt. No. 42, at 1). There is, therefore, no basis on which to conclude the defendants were the same. Moreover, as Plaintiff notes, in *Denis*, defendant McCoy was dismissed on statute of limitations grounds. (Dkt. No. 109, at 15 (citing *Denis*, 2006 WL

Defendant Bellnier was aware of the "*general issue* of ETS exposure in the [Livingston

Correctional Facilities] dormitories" in the mid-1990s, and of that "plaintiff's specific concerns

of ETS exposure," and challenge to the smoking policy, 2006 WL 1994757, at *1, 7, 2006 U.S.

Dist. LEXIS 47998, at *2–3, 22 (emphasis added), is insufficient to establish Defendant

Bellnier's personal involvement in Plaintiff's case. Moreover, there is no evidence in the record

that any of the Defendants were aware of the general issue of smoke exposure at Downstate or

Clinton or of  Plaintiff's specific concerns regarding ETS.

Plaintiff also contends that Defendants had the "remedial authority to alleviate his

exposure to ETS because CORC decisions have the effect of directives, which must be

implemented by the facility to which they apply." (Dkt. No. 109, at 4–16). However, without

evidence of subjective knowledge, the power to remedy a violation is not enough to establish

personal involvement in a deliberate indifference claim. *See Tangreti*, 983 F.3d at 619 (requiring

that a prison supervisor "know[] of and disregard an excessive risk to inmate health or safety").

Because, as discussed above, Plaintiff has not established that Defendants knew of his ETS

concerns, evidence that Defendants may have had the authority to provide a remedy, is not

sufficient to establish personal involvement.

Therefore, having found no genuine issue of material fact as to any Defendant's personal

involvement, the Court finds that Defendants are entitled to summary judgment.

## V.    CONCLUSION

For these reasons, it is hereby

---

217926, at *11, 2006 U.S. Dist. LEXIS 3118, at *33–35)). Thus, Plaintiff's citation of this case is wholly
unavailing.

**ORDERED** that Defendants' supplemental motion for summary judgment (Dkt. No. 106) is **GRANTED**; and it is further

**ORDERED** that the Amended Complaint (Dkt. No. 42) is **DISMISSED with prejudice**; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

Dated: __October 22, 2021__
Syracuse, New York

Brenda K. Sannes
U.S. District Judge